Jason M. Rudd, Tex. Bar No. 24028786
jason.rudd@wickphillips.com
Stafford P. Brantley, Tex. Bar No. 24104774
stafford.brantley@wickphillips.com
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Phone: (214) 692-6200
Fax: (214) 692-6255

COUNSEL FOR FOUNDATION FOR ANIME AND NICHE SUBCULTURES

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: § § | CASE NO. 23-10370-smr | |
| CRAIGE KEVIN HOWLETT, § § | CHAPTER 7 | |
| Debtor. § § | | |
| § | | |
| FOUNDATION FOR ANIME AND § NICHE SUBCULTURES, § § | | |
| Plaintiff, § | ADVERSARY NO. _____ | |
| § | | |
| v. § | | |
| § | | |
| CRAIGE KEVIN HOWLETT, § § | | |
| Defendant. § | | |

**COMPLAINT**

TO THE HONORABLE SHAD ROBINSON, UNITED STATES BANKRUPTCY JUDGE:

Plaintiff Foundation for Anime and Niche Subcultures ("FANS" or "Plaintiff") brings this action against Defendant Craige Kevin Howlett ("Howlett" or "Debtor") for judgment, allowance of claims, and determination by the Court that the debt owed by Debtor to Plaintiff is nondischargeable, and as cause therefore would show the Court as follows:

# I. INTRODUCTION

1. Debtor fraudulently obtained over $656,000 in funds from FANS's bank account between 2020 and 2022 by abusing his position as CFO to take advantage of FANS. After Debtor's misconduct came to light, Debtor resigned from his CFO position with FANS and provided FANS with an accounting of his fraudulent withdrawals, which detailed the personal uses for which he dedicated FANS's own money. Debtor made promises to repay these funds over one year ago and committed to making arrangements to free up capital to make good on his promises. Debtor has agreed to use exempt assets to make certain payments to FANS to repay FANS's funds Debtor fraudulently obtained, but such anticipated payments, based on Debtor's estimates and FANS's investigation, will fall far below $656,000.

2. FANS seeks adjudication and allowance of its claim against Debtor and an exception from the Debtor's discharge.

# II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b). To the extent that this is not a core matter, FANS consents to entry of a final judgment by this Court pursuant to 28 U.S.C. § 157(c).

# III. PARTIES

6. Plaintiff Foundation for Anime and Niche Subcultures is a nonprofit corporation organized and existing under the laws of the State of California with its principal place of business in San Jose, California.

7.      Defendant Craige Kevin Howlett is the debtor in this chapter 7 case. He initiated this bankruptcy case by filing a voluntary petition under chapter 7 of the United States Bankruptcy Code on May 30, 2023 (the "Petition Date") in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Court"), and was assigned Case No. 23-10370-smr. Howlett is an individual residing in Pflugerville, Texas. He may be personally served anywhere in the State he may be found.

### IV. FACTUAL ALLEGATIONS

8.      On May 30, 2023, the Court entered Debtor's Voluntary Petition under Chapter 7 (*See* ECF No. 1) and originally set the deadline to file objections to dischargeability of debt under § 523 as September 5, 2023 (the "Deadline"). After the Court granted FANS's and Debtor's multiple extension requests of this deadline, the current deadline to file objections to dischargeability of debt under § 523 is April 5, 2024.

9.      FANS is a non-profit organization headquartered in San Jose, California. FANS's goals are to promote awareness and appreciation of and stimulate interest in Asian culture, media, and underrepresented subcultures, primarily through the presentation of conventions and events that educate and celebrate ongoing contributions of subcultures to art and mainstream culture, and to support local charitable organizations.

10.     Debtor served as FANS's Chief Financial Officer from no later than 2018 to August 2022. As FANS's CFO, Debtor had access to and did regularly access FANS's Comerica bank account ending in #1558 (the "Bank Account"). Debtor admits in his Petition for Bankruptcy filed May 30, 2023, that he has an outstanding debt owed to FANS incurred from 2020 through 2022 in the amount of $350,000.[1]

---

[1]     ECF No. 1 (Petition) at 35.

11. On August 2, 2022, Debtor emailed FANS's President and CEO, Che-Lin Ho, a resubmission of Debtor's resignation to the Board of Directors from his CFO position with FANS and a statement of the Bank Account activity. In the August 2 email, Debtor committed to repaying his debt, and he assumed full responsibility for his misconduct. Debtor's statement of accounting detailed $248,566.00 of Debtor's debt to FANS. According to Debtor, $87,058.95 of the debt was used to make Debtor's credit card payments to Black Card, Capital One, and Apple. $77,974.87 of the debt was used for direct support, consisting of mortgage services, a Dell computer purchase, and payments to the IRS, Foundation Lock Financial, Tesla Motors, and "the Law Offices." $35,418.40 of the debt was used for indirect support, which included payments on Debtor's Disney time share, air conditioning repairs, refrigerator replacement, T-Mobile hot spot, and various purchases from Amazon. Finally, $37,812.99 of the debt consists of other withdrawals, including for food, gasoline, a payment to an individual named Corrine (presumably Debtor's now ex-wife) and other services. None of Debtor's foregoing uses of FANS's funds benefited FANS. Despite this detail, Debtor's accounting sums to $238,265.21, leaving $10,301.00 of Debtor's asserted total unaccounted for.

12. Debtor alleges he repaid $8,723.27, leaving a remaining detail totaling $239,842.70 (including the unaccounted $10,301.00).

13. FANS has performed and continues to perform an investigation into the actual amount of FANS's funds Debtor fraudulently obtained, which today (based on FANS's forensic investigation) reflects approximately, but not less than, $656,000. Debtor has agreed to make payments from exempt assets to FANS in an effort to repay the stolen FANS funds, but such payments will fall far below Debtor's estimates and FANS's investigatory estimates.

14. In sum, Debtor used his executive position with FANS to fraudulently withdraw FANS's funds to be used for his personal use and benefit. When faced with his deceptive and fraudulent conduct, Debtor promised to repay the funds he improperly took. Debtor's fraudulent withdrawals from FANS's Bank Account, for his personal use and benefit, and refusal to repay FANS in full for these improper withdrawals caused FANS at least $656,000 in damages. Based on FANS's current investigation of Debtor's fraudulent withdrawals, FANS estimates Debtor's actual sum of fraudulent withdrawals to total approximately, and at least, $656,000. FANS now seeks full recovery of these sums.

## V. COMPLAINT

### COUNT 1. FRAUD

15. FANS incorporates by reference the foregoing paragraphs as though fully restated herein.

16. Debtor knowingly and wrongfully withdrew FANS's funds from its Bank Account without FANS's authorization. Debtor concealed the foregoing wrongful conduct, a material fact, despite his duty, through his position as FANS's CFO, to disclose the wrongful conduct to FANS. *Matter of Selenberg*, 856 F.3d 393, 399 (5th Cir. 2017) ("When one has a duty to speak, both concealment and silence can constitute fraudulent misrepresentation; an *overt act* is *not* required.") (emphasis in original) (quoting *In re Mercer*, 246 F.3d 391, 404 (5th Cir. 2001)); *W. Pac. Elec. Co. Corp. v. Dragados/Flatiron*, No. 118CV00166LJOBAM, 2018 WL 2088276, at *3 (E.D. Cal. May 4, 2018) ("There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.") (citations omitted). Debtor

knew at the time he withdrew FANS's funds that he did not have authorization yet still withdrew the funds and used them for his personal benefit and to FANS's detriment. On August 2, 2022, Debtor admitted his wrongdoings in an email to FANS's president and CEO in which he promised to repay the debt, which he failed to do knowing full well his intent to never repay the full amounts owed to FANS.

17. As a result, FANS has suffered injury, including no less than $656,000 in damages.

### COUNT 2. BREACH OF FIDUCIARY DUTY

18. FANS incorporates by reference the foregoing paragraphs as though fully restated herein.

19. Debtor had a fiduciary relationship with FANS's through Debtor's position as FANS's CFO. Debtor breached his fiduciary duty owed to FANS by withdrawing FANS's funds from FANS's Bank Account without its authorization for Debtor's personal benefit.

20. As a result, FANS has suffered injury proximately caused by Debtor, including no less than $656,000 in damages.

### COUNT 3. MONEY HAD AND RECEIVED

21. FANS incorporates by reference the foregoing paragraphs as though fully restated herein.

22. Debtor holds improperly withdrawn funds that belong to FANS in equity and good conscience. The improperly withdrawn funds Debtor holds total not less than $656,000 that should be paid by Debtor back to FANS.

23. Accordingly, FANS has suffered damages. Based on the fundamental principles of justice, equity, and good conscience, FANS seeks actual damages in an amount and of a character within this Court's jurisdiction, plus pre-judgment and post-judgment interest in the maximum amount allowed by law.

### COUNT 4. UNJUST ENRICHMENT

24. FANS incorporates by reference the foregoing paragraphs as though fully restated herein.

25. Debtor, by withdrawing FANS's funds without FANS's authorization and at FANS's expense, received funds that in equity and good conscience belong to FANS.

26. Such funds have unjustly enriched Debtor, and it would be unconscionable for him to retain the funds.

### COUNT 5. THE DEBT IS NON-DISCHARGABLE PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

27. FANS incorporates by reference the foregoing paragraphs as though fully restated herein.

28. FANS seeks an exception from the Debtor's discharge for the debt Debtor owes FANS arising from his actual fraud of withdrawing FANS's funds from its Bank Account without its authorization for Debtor's personal benefit. Bankruptcy Code section 523(a)(2)(A) provides that a debtor is not discharged from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2).

29. In order to prevail on a complaint under section 523(a)(2)(A), the creditor must show: "(1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the representation was made with intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result." *Saenz v. Gomez (In re Saenz)*, 899 F.3d 384, 394 (5th Cir. 2018); *see also Selenberg v. Bates (Matter of Selenberg)*, 856 F.3d 393, 398 (5th Cir. 2017).

30. "Actual fraud" as used in § 523(a)(2)(A) also "encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Matter of Zolnier*, No. 21-20260, 2021 WL 5778461, at *2 (5th Cir. Dec. 6, 2021), cert. denied sub nom. *Collins v. Zolnier*, 143 S. Ct. 92, 214 L. Ed. 2d 17 (2022) (quoting *Husky Intern. Elecs., Inc. v. Ritz*, 578 U.S. 355, 359 (2016)). The term "actual fraud" has common law origins and "denotes any fraud that 'involv[es] moral turpitude or intentional wrong.'" *Husky*, 578 U.S. at 360 (citation omitted). In other words, "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Id*.

31. Debtor withdrew FANS's funds from its Bank Account without authorization, used those funds for his own personal benefit, and has failed to repay the withdrawn funds. Debtor knew at the time he withdrew FANS's funds that he did not have authorization yet still withdrew the funds and used them for his personal benefit. Debtor admitted his wrongdoings in the August 2, 2022 email to FANS's president and CEO in which he promised to repay the debt, which he failed to do knowing full well his intent to never repay the full amounts owed to FANS.

32. After insufficient repayments by Debtor, FANS suffered no less than $656,000 of damages because of Debtor's actual fraud.

### COUNT 6. THE DEBT IS NON-DISCHARGABLE PURSUANT TO 11 U.S.C. § 523(a)(4)

33. FANS incorporates by reference the foregoing paragraphs as though fully restated herein.

34. Section 523(a)(4), in pertinent part, excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity[.]" 11 U.S.C. § 523(a)(4). According to the Fifth Circuit, this exception applies to "debts incurred through abuses of fiduciary positions . . . and involving debts arising from the debtor's acquisition or use of property that is not the debtor's."

*FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011) (citations and brackets omitted, ellipsis in original).

35. As FANS's former CFO, Debtor indisputably owed fiduciary duties to FANS, under both federal, California, and Texas law.

36. For purposes of section 523(a)(4), "[f]raud in a fiduciary capacity . . . requires positive fraud, or fraud in fact, involving moral turpitude or intentional wrong" and "typically requires a false statement or omission." *Light, et al. v. Whittington (In re Whittington)*, 530 B.R. 360, 388 (Bankr. W.D. Tex. 2014) (citations and internal quotation marks omitted).

37. Debtor made numerous unauthorized withdrawals from FANS's account consisting of FANS's funds for Debtor's personal use and benefit. Debtor admitted that he knew at the time he fraudulently withdrew FANS's funds out of its Bank Account that said withdrawals were unauthorized and, therefore, fraudulent. At least $656,000 of the funds fraudulently transferred out of FANS's Bank Account remain unpaid despite Debtor's promises to repay which includes, without limitation, Debtor's promise in his August 2, 2022 email.

38. Thus, Debtor committed fraud while in a fiduciary capacity, and the debts arising therefrom are excepted from discharge.

39. Additionally, a debt may be excepted from discharge if it arises from "defalcation" while in a fiduciary capacity. For purposes of section 523(a)(4), "defalcation" by a fiduciary includes "self-dealing and wrongful diversion of . . . funds . . . ." *Whittington*, 530 B.R. at 388 (citation omitted).

40. As established above, Debtor engaged in impermissible self-dealing in every instance that he utilized FANS's property for his own benefit without any benefit to FANS.

41. Debtor's extensive pattern of self-dealing while he was the CFO of FANS constitutes defalcation in a fiduciary capacity and all debts arising therefrom are non-dischargeable pursuant to section 523(a)(4) of the Bankruptcy Code.

### COUNT 7. THE DEBT IS NON-DISCHARGABLE PURSUANT TO 11 U.S.C. § 523(a)(6)

42. FANS incorporates by reference the foregoing paragraphs as though fully restated herein.

43. The obligation owed by Debtor to FANS is the result of willful and malicious injury and is therefore excepted from discharge under section 523(a)(6) of the Bankruptcy Code, which excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6).

44. For purposes of section 523(a)(6), an "injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller v. JD Abrams Inc. (Matter of Miller)*, 156 F.3d 598, 606 (5th Cir. 1998).

45. Debtor knew or should have known that he was and would continue to be unable to repay FANS the funds he fraudulently transferred out of FANS's Bank Account. Debtor knew he was not authorized to use FANS's funds for his own personal benefit and that he did not have sufficient assets to repay FANS the total amount he fraudulently transferred from FANS's Bank Account.

46. The obligations owed by Debtor to FANS are the result of "willful and malicious injury" and are therefore excepted from discharge under section 523(a)(6) of the Bankruptcy Code.

### VI. CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court enter a judgment against Debtor (i) in the amount of actual, consequential, and compensatory damages FANS suffered as a

result of Debtor's fraud without repayment, in an amount to be determined but not less than $656,000 of damages because of Debtor's actual fraud and breach of his fiduciary duty, plus all associated costs, including pre- and post-judgment interest, and other costs, (ii) allowing the judgment as a claim against Debtor's bankruptcy estate under 11 U.S.C. § 502, (iii) excepting FANS's allowed claim from discharge under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6); and (iv) granting FANS such other relief at law or in equity to which it may be entitled.

Respectfully submitted,

*/s/ Jason M. Rudd*
Jason M. Rudd, Tex. Bar No. 24028786
jason.rudd@wickphillips.com
Stafford P. Brantley, Tex. Bar No. 24104774
stafford.brantley@wickphillips.com
Wick Phillips Gould & Martin, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Phone: (214) 692-6200
Fax: (214) 692-6255

COUNSEL FOR FOUNDATION FOR ANIME AND NICHE SUBCULTURES